Extra, mistress. Good morning, your honors. May it please the court. Andrew Silverman on behalf of BB Energy. BB Energy is a fuel trading company that occasionally sells fuel to the Republic of Haiti. And so it sometimes has in its possession the assets of Haiti, such as credits for fuel purchases. BB Energy was not involved in the transactions between Preble-Rish and Haiti that underlie this dispute. Rather, when Preble-Rish sued Haiti in arbitration in New York, it filed this garnishment action against BB Energy in Texas to secure a possible future recovery if Preble-Rish wins the arbitration. It's undisputed that BB Energy, as garnishee, stands in the shoes of Haiti and can raise Haiti's defenses, including sovereign immunity. BB Energy has asserted Haiti's sovereign immunity both from prejudgment attachment and from the tort claims that Preble-Rish has asserted here, starting with the prejudgment attachment issues. We have explained that Haiti is immune from prejudgment attachment because the property in BB Energy's possession was not used for commercial activity in the United States and because Haiti has not explicitly waived its immunity to prejudgment attachment, nor has it directed such a waiver towards the United States. Preble-Rish has not disagreed with the merits of any of these arguments. As to the commercial activity in the United States argument in particular, Preble-Rish has doubly waived any substantive response, having not raised one in this court or in the district court. Preble-Rish's only response is a procedural one, arguing that law of the case as to an earlier district court decision, but law of the case does not require this court to follow district court decisions, nor is this court bound in an appeal as to an amended complaint from a district court's decision as to the original complaint because Preble-Rish's procedural arguments fail and it has not raised any substantive response, this court should reverse as to the prejudgment attachment issue, which adjudicates the only prayer for relief sought against BB Energy and thus fully resolves the instant litigation as to BB Energy in BB Energy's favor. If the court wishes to go further, it should hold that Haiti and thus BB Energy are immune from Preble-Rish's tort claims because Haiti has not agreed to arbitrate them. Because that is the only substantive issue that Preble-Rish has addressed, I'll focus my attention there unless the court has any questions with regard to the prejudgment attachment issue. So starting with the arbitration issue and immunity from suit, the arbitration clause between Preble-Rish and Haiti is exceptionally narrow, especially when viewed through the prism of sovereign immunity where waivers must be strictly construed in favor of the sovereign and any ambiguity resolved against waiver. The parties could have chosen to arbitrate all of their disputes or all disputes related to the contract or all disputes arising out of the contract, but that's not what they did. Instead, they chose to arbitrate only those disputes under the contract, which is extraordinarily narrow. And as Preble-Rish acknowledged in its brief to this court, its claims are for conduct that, quote, that conduct, quote, beyond the contracts. That's footnote 23 in their answering brief. The fraud claims, for example, involve oral promises that were made outside the contract. These are promises that were made after Haiti had already defaulted on the contract, and those promises were made to induce Preble-Rish to deliver the fuel even though the contract had been defaulted on and there should be no fuel delivery under the contract in that circumstance. And the conversion claim asserts that Haiti stole the fuel and seized the assets, did so by obtaining an ex parte order from the court in Haiti. Those claims are completely divorced from and certainly do not, as this court requires, center on any interpretation of the contract, and thus there is no waiver of immunity, no agreement to arbitrate those tort claims. To get a little more granular about this, everybody agrees that Haiti and thus BB Energy are immune from Preble-Rish's tort claims unless Haiti has waived its immunity by agreeing to arbitrate those claims. The fuel contracts, as I said, agree to arbitrate only disputes under the contract. That is, just as a matter of plain English, very narrow. It's not related to the contract. It's not disputes in connection with the contract. It's not even disputes arising under the contract, which this court in cases like Explo versus Southern Natural Gas and Ford Motor Company have said arising under is very narrow. This is even narrower. And, of course, here we're dealing with, we're looking at this arbitration clause as a possible waiver of sovereign immunity, and so it has to be construed especially narrowly to make sure that the sovereign has actually agreed to arbitrate these tort claims before the tort claims can actually be arbitrated and before this court can find that there's been a waiver of sovereign immunity. A review of Preble-Rish's amended complaint demonstrates that the tort claims here are not under the contracts. The claims, which are in the amended complaint in ROA 851 and 852, they do not even mention the contracts. Interestingly, this court in Ford versus NYL Care Health Plan says the test for whether a tort claim relates to, and so that's the much broader relates to rather than arising under, under. Are you saying, counsel, that this case rises and falls over whether there's an agreement to arbitrate? So if you're focused on immunity from suit... Yes. ...then, yes, the issue is whether or not there's an agreement to arbitrate these tort claims. And our argument is that there is not. And even looking at a very broad relates to arbitration clause, this court has said the test whether a tort claim relates to a contract depends on whether the claim could be... could be maintained without reference to the contract. And here, again, at ROA 851 and 852, you have these tort claims, and they do not reference, they do not relate to, uh, to the contracts. The fraud claim, as I was saying, is premised on allegedly false statements, statements that were made over the phone by a Haitian official long after the contract had not already been signed but also had been breached and had been defaulted on. And it was those false promises that Haiti would pay that led, uh, Preble Reach to deliver the fuel even though, under the contract, they should not have delivered the fuel because there had been a default. The conversion claim. Over and over again at the complaint... in the complaint. This is at ROA 834, 835, 842, 846, 847. Preble Reach talks about theft of property. Theft of Preble Reach's property. That Preble Reach alleges that Haiti stole the property. That is not a claim that arises under a contract or a claim that is under the contract. That is an entirely separate claim. In fact, if you look at some of the language, uh, in Preble Reach's claims, for example, at ROA 852, and this is paragraph 122, Preble Reach labels this conversion claim an independent, intentional maritime tort. And yes, that's exactly right. But as the Ninth Circuit has said in Cape Flaherty v. Titan Maritime, independent wrongs, those that do not require any interpretation of the contract, are not arbitrable. And here, this court has said, again, looking at a broader arising under provision, broader than the just under provision that we have here, that in order for a claim to arise under a contract, it needs to be one that centers on the interpretation of the contract. But here, these claims have nothing to do with anything in the contract. There's nothing that the district court needs to interpret, or nothing that the arbitrators would need to interpret in the contract in order to determine whether or not, whether or not that claim would prevail. The same is true of the fraud claims. I think if you look at some of the language specifically used by Preble Reach both in their brief to this court and in their amended complaint, that becomes quite clear. So paragraph 114 of their amended complaint, this is at ROA 851, the complaint alleges that, quote, false statements, unquote, made by a Haitian official to Preble Reach while the ship was in international waters. That was what, quote, induced, unquote, Preble Reach to bring the ship into port and start delivering the fuel. It was not the contract that induced them to deliver the fuel. It was these false statements. They say at paragraphs 114 and 79 of their complaint that Preble Reach ordered the ship into port and started delivering the fuel, not because of the contract, but, quote, as a result of this Haitian official's oral promise to pay right away. And they say the same thing to this court. At page 28 of their brief, they say Preble Reach, quote, relied upon, unquote, Haiti's promise that the payment would be forthcoming. That's what, quote, led, unquote, Preble Reach to deliver the fuel. And at page six of their brief, they say that Biampad's, quote, fraudulent actions, so not anything to do with the contract, but these allegedly false statements made outside the contract. That was what, quote, caused PRH to order its vessel into port. None of this has anything to do with the contract, certainly does not involve any interpretation of the contract. And remember, again, that this arbitration provision is being used as an attempt to waive Haiti's sovereign immunity, and so it is critical and something the district court failed to look at, something that Preble Reach has never addressed, that when you're looking at a waiver of sovereign immunity, it must be very... it must be strictly construed. Any ambiguity must be weighed in favor of maintaining sovereign immunity, not waiving sovereign immunity, and that's because it's critically important that before a court or before the arbitrators find that there has been a waiver by a sovereign of its immunity, of its statutory right to immunity, that the court has to be certain of that. This court is the gatekeeper ensuring that that sovereign immunity is protected. If I can, I want to turn back to where I started, which was the prejudgment-attachment issue. We've been talking about immunity from suit, but the court doesn't need to reach that. The only prayer for relief against BB Energy is prejudgment-attachment, and so if this court finds that there is immunity from prejudgment-attachment, it doesn't even need to get to the immunity from tort issue. As I said, we've raised a couple of arguments about immunity from prejudgment-attachment and they simply have not been addressed by Preble-Reich. Starting with the explicit waiver requirement. This comes from 28 U.S.C. 1610d. It's part of the FSIA, and it says that a foreign state must explicitly waive its immunity from prejudgment-attachment. As you can tell from that language and the district court said the same at ROA 513, simply agreeing to arbitrate is not enough. There has to be a waiver specifically as to prejudgment-attachment. That's what the 7th Circuit said in Pine Top Receivables. It said that a waiver does not, quote, speak to orders of pre-answer security in judicial proceedings would not be explicit, and therefore it is not sufficient as a waiver under the FSIA. There has been no explicit waiver as to prejudgment-attachment. What the district court relied on was the fact that the parties had agreed in the contract that there would be letters of credit and there would be prepayments, and that was in order to ensure the smooth operation of the contract, in order to make sure that there were payments and that the money was available. That is not about what would happen after the fact in litigation. As the 7th Circuit again in Pine Top Receivables said, using credit to provide protections is, quote, distinctly different, conceptually and practically. During contract security, quote, ensures the smooth operation of the contract during its term. It is not a surrender of assets to a court, potentially long after the contract ends. So the district court, in inferring an explicit waiver of sovereign immunity by looking at the fact that the parties had agreed to use credit with regard to how the contract would operate, not about how litigation after the fact would occur erred in accepting what is not an explicit waiver of sovereign immunity, as is required by the FSIA. My last point is about the no commercial activity in the United States argument. This doesn't involve the Preble-Riche-Haiti transactions. Instead, we're talking about the property that is in BB Energy's possession. So that is the result of transactions between BB Energy and Haiti, because we're talking about those assets. The property that is allegedly in the possession of BB Energy in the district court was not used for commercial activity in the United States, which is the test under 28 USC section 1610D. And so, therefore, it is not eligible, it is not subject to pre-judgment attachment. It's also not subject to post-judgment attachment under 28 USC 1610A. Well, in connection with section 1610D, you got three conditions. You're challenging two of them, as I understand it. That's correct, Your Honor. Either of which is effective. There's been no explicit waiver, and then that the bonds aren't used for commercial activity in the United States. That's correct, Your Honor. But, if you establish that one of those three conditions exists, that's sufficient that there should be no pre-judgment attachment. That is absolutely correct, Your Honor. I would say from a judicial efficiency standpoint, and this is an argument that Preble-Reach raised in their brief, there is some value to getting to the no commercial activity in the United States argument, because it would address additional arguments that Preble-Reach is making, not before this court, but in the district court. But yes, you're absolutely correct. Either of those bases is independently sufficient. Let me just finish on this with regard to no commercial activity in the United States. The transactions between Haiti and BB Energy were purchases by the Haitian government to deliver fuel in Haiti for the benefit of the Haitian people. The only connection to the United States is that BB Energy is in the United States, but that is not enough. As the Second Circuit said, an export-import bank of China versus Grenada. In that case, the property was funds that were earmarked for Grenada that had been generated by travel between the two countries, between the United States and Grenada. The court held that those funds were not used for commercial activity in the United States. We think that that is a much closer case than this one. Here again, you've got not only a waiver in this court, but as to the no commercial activity in the United States argument, you have a double waiver because they haven't argued the substance of it in the district court either. I'll reserve the balance of my time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, on September 27, 2021, New York State Court Judge Borach held oral argument and ordered defendants Bienpad and Republic of Haiti to arbitrate all of their disputes with Preble Ridge, Haiti, PRH. One week before Judge Borach's hearing, PRH amended its arbitration claims to include a maritime tort claim against the defendants and provided notice to defendants' counsel. Defendants were represented by counsel at the hearing before Judge Borach and did not raise the tort claim or the FSIA, though they had the opportunity to do so. The New York Appellate Division upheld Judge Borach's order. BB Energy's appeal is no more than an impermissible federal collateral attack on a state court order upheld on appeal. The Fifth Circuit has held it is a collateral attack if it must in some fashion overrule the previous judgment from Miller v. Meinhard Commercial Corp. Judge Borach ordered the parties to resolve all claims via arbitration. BB Energy seeks to modify that order to create an exception for PRH's maritime tort claim which amounts to a collateral attack on the state court order. While Judge Ellison's order denying sovereign immunity was an interlocutory order subject to appeal, his decision addressing prejudgment attachment was not. And with apologies to the court and perhaps due to the expedited briefing ordered in this case, we made a mistake in our brief on that point. The Second Circuit has issued an opinion on that score and we have supplied that pursuant to the court's local rules. It's Kensington International Limited v. Republic of Congo where the Second Circuit said we distinguish claims of FSIA immunity from suit under Section 1604, denials of which are appealable collateral orders and claims of FSIA immunity from attachment, denials of which are not appealable. An order granting security is not appealable because the aggrieved party may obtain complete relief from the final judgment. In response to our submission to the court, BB Energy's council submitted the case of Stena Raderi and it is our view that that case is a complete red herring. It does not apply to these facts. Stena involved a denial of FSIA sovereign immunity under 1604, not a grant of prejudgment attachment under 1610. In Stena, there was no waiver of sovereign immunity under 1604 as there is in this case because of the New York Arbitration Clause. Also, the property attached was not the property of the sovereign in that case, but that of the debtor, thus FSIA Section 1609 immunity from prejudgment attachment was not implicated. And in fact, the Second Circuit distinguished Stena in an earlier case, Caribbean Trading and Fidelity Corporation versus Nigerian National Petroleum Corporation, 948 F2nd 111 at 114. And there the court said, citing a number of cases holding appealable denials of claims of FSIA, an NPC argues that the order in question is immediately appealable, citing to Stena Roderi amongst other cases. The court went on to say, however, these cases deal exclusively with claims of immunity from suit based on Section 1604 of the FSIA and not claims of immunity from prejudgment attachment based on 1609 of the FSIA. The immunity conferred by Section 1609 relates solely to the merits of the order requiring security. However, as noted, the merits of an order granting security may not be appealed under the collateral order doctrine. Now, the Fifth Circuit does have a decision, Noble Cap Fund Management, which says that pendant appellate jurisdiction is only proper in rare and unique circumstances where a final appealable order is inextricably intertwined with an unappealable order or where review of the unappealable order is inextricably intertwined with a non-appealable pre-judgment attachment order. Now, B.B. Energy relies on an email dated October 19, 2021 from the arbitration panel,     relies on an email dated October 19, 2021 from the arbitration panel, chairman of the arbitration panel.  arbitration panel may be allowed by the panel, but that email is irrelevant. Such a statement is not necessary and has no effect on whether the claims were filed before the arbitration panel. There is, in fact, no comparable rule in the arbitration proceeding requiring a motion for leave to file an amended statement of claim. There is no specific arbitration rule that are identified in the contract. All of the PRH arbitrators are members of the Society of Maritime Arbitrators, and even if they were to apply those rules, plea amendments are freely permitted until hearing under the SMA rules. Thus, the tort claims were before the arbitration panel at the time of Judge Borach's hearing, and the real parties in interest did not raise those claims if they had a concern about them, though they had the opportunity to do so. So, from our standpoint, we believe that that serves to resolve this appeal. However, while we don't believe it is necessary to go any further in resolving this case, should the court consider whether PRH's tort claims are covered by the arbitration clause, we look to that clause, and it says, in the event of a dispute between the buyer and the seller under the contract, under this clause submitted by either party to arbitration in New York before three arbitrators. The Fifth Circuit in the Marlin of Louisiana Inc. v. Parsons-Gilbany case said, amongst other things, a presumption of arbitrability exists requiring that whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy. The arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. In Marlin, there were two arbitration clauses. One said, any dispute arising under this subcontract that is not settled by agreement of the parties will be settled by arbitration. The other clause said, in the event of any dispute with respect to the interpretation or performance of this subcontract, the same shall be settled by arbitration. B.B. Energy equates that quote arising under to under the contract and argues that per Kinoshita in the Second Circuit, the clause is narrow, but Marlin actually held that the arbitration clause including the language arising under and with respect to the interpretation or performance of this subcontract was broad. So B.B. Energy's opening brief at page 17 cites to the Evans Building Materials Corporation of America case. It's a Federal Circuit case that cites the Fourth Circuit case law. And in that case, the court held that claims arise under an agreement when they are, quote, related to the interpretation and performance of the contract itself. Thus, arising under and related to interpretation and performance of the contract are interchangeable. And under Fifth Circuit precedent, arising under, which B.B. Energy equates to under the contract, is a broad clause per Marlin. Marlin also noted that several courts have permitted arbitration of disputes regarding fraud and inducement of a contract under arbitration, clauses similar to Parsons-Gilbane-Marlin clause. And it also held that Kinoshita, the Second Circuit decision, is inconsistent with Federal policy favoring arbitration. I think it's also worth noting if the court should go down the road of evaluating the Second Circuit's standard for determining whether a clause is narrow or broad in the Louis-Dreyfus-Noguchi-Essay versus Blystead-Shipping-and-Trading case, that we believe this clause still meets the parameters of, or the issue, the tort still meets the parameters of a narrow clause. If it's narrow, is the dispute over an issue that is on its face within the purview of the clause or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause? We believe that it is within the purview of the clause. And specifically, the maritime tort claim is a claim about both performance and interpretation. BMPAD made the promise to immediately pay for the fuel upon delivery to entice PRH to continue contract performance by delivering fuel to Haiti. PRH agreed to continue performance under the contract to obtain that which BMPAD promised under the contract, that is payment to the fuel, and you cannot ascertain the price due without reference to the contract. This claim also relates to a claim about the interpretation of the contract. When did title transfer under the contract? So we have to look at both performance and interpretation of the contract to evaluate the tort claim asserted by PRH. We've also cited to the court the Gregory v. Electromechanical Court decision from the 11th Circuit, which specifically rejects Kinoshita. I think that particular case has very interesting language it provides, amongst other things, whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of the action asserted. And in that case, Gregory said there were seven counts, and every count incorporates all the facts alleged in the count denominated as a breach of contract claim. Thus the complaint itself says that the facts constituting defaults under the contract are a critical part of the so-called tort claims. If the buyer had fully complied with the contract as interpreted by the plaintiffs, there would be no tort claims. Well, that is precisely what we have here. If the MPAD had paid the monies that were due, there would have been no tort claims. And Gregory also says that you look to the facts in the complaint to determine the scope of the arbitration clause, not the causes of action. And the facts, as alleged with respect to the tort claim, were identical to that which with respect to the contract claim. But what gave rise to the tort claim was there was an additional promise that was made, the promise of immediate payment upon delivery. So in our view, we believe that the clause is a broad clause under Marlin, Fifth Circuit precedent, but even if it's construed as a narrow clause, that it still falls within the parameters of that clause, and the Judge Ellison made the proper decision to refer the case or to deny basically saying that the tort claims were properly referred to arbitration. So a couple of other items I wanted to address with the Court. You're going to talk about the waiver of immunity from pre-judgment attachment. Your Honor, the waiver of pre-judgment immunity really is not at issue in this case in the sense that it's not subject to interlocutory appeal, at least it shouldn't be. The only issue that we're really talking about is sovereign immunity under 1604. That issue has been decided by Judge Ellison with respect to the fact that the courts specifically provide for New York arbitration, and it's an exception to sovereign immunity under 1605D, I believe. So we did not waive any arguments contrary to the Energy Council's assertions. What about 1610? 1610, Your Honor, is a non-appealable interlocutory order pursuant to the Kensington case, and the Kensington case is good law. It's been adopted in the Third Circuit, and there are no adverse decisions concerning it. And with respect to waiver issues, PRH did not waive any arguments. We cited Judge Ellison's August 10, 2021 decision. Kensington, that's the case you cited in your 28J? Yes, Your Honor. The case you cited in the 28J? Yes, Your Honor, that's correct. The 16-year-old case? It's a 16-year-old case, Your Honor, but it's still good law. So PRH did not waive any arguments. We noted that Judge Ellison's decision that BMPAD waive both sovereign immunity to suit and to prejudgment attachment became a law of this case, effective September 9, 2021. With respect to this Court's discretion to evaluate that issue under a law of the case scenario, we believe that the Court's discretion is circumscribed by the issuance of the order by New York State Court Judge Borach affirmed by the New York Appellate Division ordering BMPAD and the Republic of Haiti to arbitrate all of their disputes with PRH. Any exercise of discretion by this Court in evaluating whether sovereign immunity under the FSIA exists necessarily would have this Court engaging in a collateral attack on those orders. One other issue with respect to the tension between the FSIA and the FAA where immunity is narrowly construed under the FSIA and yet the FAA looks to favor arbitration and interpreting clauses as broadly as possible. There is a federal policy that favors arbitration. In the event of ambiguity, contra pro forentum would construe the contract against the drafter. In this case, Judge Borach's order found that BMPAD drafted the arbitration clause. It said ROA 816. This circuit precedent also provides that if there is any ambiguity in the arbitration clause, it favors arbitration and exclusions to arbitration clauses should be specifically identified. Otherwise, they fall within the scope of the clause. In our view, once sovereign immunity has been waived and that has happened in this case twice. It happened when the counsel for BMPAD were before Judge Borach and did not raise FSIA immunity in the hearing before him where he compelled the parties to arbitrate. It also happened when Judge Ellison denied sovereign immunity with respect to the initial waiver. Once sovereign immunity has been waived, construction of the arbitration clause falls within the penumbra of the FAA. We have not seen any cases that show nature of foreign sovereign immunity and arbitration clauses. What we've seen in our review of the case law is that you look to first has there been a waiver of sovereign immunity and in this case there has been. Once that waiver has taken place, then you look to the FAA case law to construe the nature of the clause at issue. To address a number of items that B.B. Energy's counsel raised, where he says the claims have nothing to do with the contract, again, I think if you look actually at the facts in the original complaint and the amended complaint, they are identical. The facts relating to the tort claim arise out of the nature of the contractual relationship between the parties. Finally, I would say that we don't believe that it's necessary at all to address the prejudgment attachment issue because it's a non- appealable interlocutory order and consequently it should not be before this court and especially because of the nature of the collateral order in the discussion I had raised previously. On that basis, we respectfully request that the court affirm the decisions of the District Court Judge Ellison. Thank you, Your Honor. Your Honor, let me start with appellate jurisdiction in the case of Kensington. We submitted a response to the 28J letter yesterday. If the court doesn't have extra copies. We have. Perfect. The issue in Kensington was a motion to dismiss both the suit and also the request for garnishment raising sovereign immunity. This court said that there was jurisdiction to consider both the motion to dismiss issues and the garnishment issues. Whether the immunity comes from 1604 or 1609 or 1610 doesn't really matter. The cases say, this court's cases say that sovereign immunity, the denial of sovereign immunity is something that is immediately appealable. This is something that's clear in the Steny Rodary case and we think that it controls here. But my friend doesn't answer the other arguments that we made in the 28J letter 28J response that show why this case is such a perfect example of the denial of sovereign immunity as opposed to Kensington where the issue was whether or not the sovereign could post a bond. Here there is specific property that has been identified that they seek to attach. If they prevail in attaching that property, that is property that Haiti no longer has dominion over, no longer has control of, can no longer use for the course of this litigation. As we cite a Seventh Circuit case that says property itself, sovereign property, carries with it its own immunities and Haiti is denied its access to this property if they prevail in a way that is very different from in Kensington. The other thing that they don't address is that here PRH is using this waiver, they're wielding this writ as a way to get discovery. And it's very clear this court has said in the first appeal in this case and in cases like Wicks that discovery, particularly discovery that is not aimed at sovereign immunity, whether or not there is sovereign immunity but is aimed at other things that that sort of discovery denies sovereign immunity because sovereign immunity is immunity from suit as well and the burdens of litigation as well as immunity from liability as well. And so the fact that they are using the writ here to try to get discovery is yet another reason why there's clearly jurisdiction here. Let me turn to the New York State Court decision. As we said in our brief, at the time that the New York State Court decision was issued, the only issues before that judge were the contract claims. There were no tort claims in the motion to compel arbitration before Justice Barack. There was no litigation about the scope of the arbitration clause. Justice Barack had no reason to say whether or not tort claims that he had no idea existed and did not know anything about would be covered by the arbitration clause. So when they wheeled this all dispute language from Justice Barack, that is dicta that goes far beyond what Justice Barack needed to decide that case. He was not aware of the tort claims, probably never told him about the tort claims and so he had no reason to decide it. And I think that this court's case, decision in Connecticut Bank of Commerce versus Republic of Congo is directly on point. Here's what the court said. Here's what this court said. New York courts do not give preclusive effect to gratuitous determinations in a prior action. Res judicata operates to bar relitigation only of issues necessary to the judgment. That's at 309 F. 3rd 240, Penn site is 248. If it is the case as it was that the contract claims were the only claims before Justice Barack and not the tort claims, then any sense that he in his decision included tort claims somehow within the scope of the arbitration clause would be exactly the sort of gratuitous determination that this court said does not bind this court from a New York court decision and that addresses their argument about this being a collateral attack somehow on his decision. It's not because he didn't decide the issue. Thank you very much. Submitted. And this panel will adjourn without a Thank you.